**Vincent RUIZ, infant, individually and on behalf of all others similarly situated by his parent, Sofia Castillo, Plaintiffs,**

v.

**Barbara BLUM, as Commissioner of the New York State Department of Social Services, The Human Resources Administration of the City of New York, and James A. Krauskopf, as Commissioner of the New York City Department of Social Services and Administrator of the Human Resources Administration, Defendants.**

No. 81 Civil 1085.

United States District Court, S.D. New York.

Oct. 27, 1982.

872

The Legal Aid Soc., John E. Kirklin, Director, Rachel Vorspan, Civil Appeals & Law Reform Unit, of counsel.

The Legal Aid Soc., Arthur J. Fried, Supervising Atty., New York City, for plaintiffs; Kathleen A. Masters, Administrative Law Unit, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant Blum; Robert A. Forte, Asst. Atty. Gen., New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants The Human Resources Administration of the City of New York and James A. Krauskopf; Norma Kerlin, Asst. Corp. Counsel, New York City, Randi J. Bader, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

In this action plaintiffs challenge the practice of the State of New York ("the State") and the City of New York ("the City") in determining eligibility for publicly funded day care services. The plaintiffs contend that the policy and practice of denying day care benefits to otherwise eligible children who are United States citizens, or non-citizen children who are lawfully present in the United States, but whose parents cannot supply a Social Security number or other proof of their lawful resident alien status, violate applicable federal and state laws and the Fourteenth Amendment to the United States Constitution.

The action was instituted on behalf of Vincent Ruiz ("Vincent"), an infant five years of age, by his mother, Sofia Castillo, individually and on behalf of a purported class similarly situated primarily for a declaratory judgment and injunctive relief pursuant to 28 U.S.C., sections 2201 and 2202, and 42 U.S.C., sections 1981 and 1983. The mother is an alien who came to the United States from Colombia, South America, in 1977 under a one-year visitor's visa. Vincent was born in August 1977 in New York City and so is a native born citizen of the United States.[1] His mother, who is employed as a housekeeper, is the payee of a grant of Aid to Families with Dependent Children ("AFDC") for Vincent.

Ms. Castillo applied to the New York City Department of Social Services, one of the defendants herein, for day care services for her son based upon her employment. Her application was granted and day care services were provided to Vincent, and he began attending the New York Foundling Hospital Day Care Program. The approval was for a six-month period subject to proof of eligibility for continued payments based upon her lawful presence in the United States. After making payments for a period of time, the City, in August 1980, determined to discontinue further payments because she had failed to present a Social Security number or otherwise document her status as a legal resident of the United States. The fact is that she cannot do so

---

1. 8 U.S.C. § 1401(a).

because her one-year visitor's visa has long expired and her continued presence in the United States is illegal. Upon a "fair hearing"[2] review by the Commissioner of the New York State Department of Social Services, the City's determination was upheld. Thereupon day care services were terminated on January 31, 1981. However, they were restored pending determination of this suit.

The complaint alleges violations of the infant plaintiff's rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the Social Security Act[3] and the New York State Social Services Law[4] and regulations.[5] Class certification of the action is sought pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, the class to be defined as all United States citizens or legally resident children who have been, are, or will be denied day care services solely because a parent is unable to provide proof of his or her lawful alien status. The defendants oppose such certification, as well as the definition of the proposed class. Each side moves for summary judgment pursuant to Rule 56 of the Rules. The parties are in agreement that there are no disputed fact issues and that the matter is ripe for summary judgment disposition, which we now address.

Funding for day care services[6] is provided by a combination of federal, state and city revenues. The bulk of financial support comes from the Federal Government.[7] New York State's share of federal moneys for providing social services includes "day care" allowances under Title XX[8] of the Social Security Act ("the Act").[9] The Act authorizes appropriations to states for the purpose of encouraging them to furnish such services towards fulfilling one or more of the following goals:

(1) achieving or maintaining economic self-support to prevent, reduce, or eliminate dependency;

(2) achieving or maintaining self-sufficiency, including reduction or prevention of dependency;

(3) preventing or remedying neglect, abuse, or exploitation of children and adults unable to protect their own interests, or preserving, rehabilitating or reuniting families;

(4) preventing or reducing inappropriate institutional care by providing for community-based care, home-based care, or other forms of less intensive care; and

(5) securing referral or admission for institutional care when other forms of care are not appropriate, or providing services to individuals in institutions.[10]

The State, as a participant in the federal program, has adopted its purposes and has authorized its public welfare officials to

---

**2.** N.Y.Admin.Code tit. 18, § 358.1 *et seq.* (1979).

**3.** 42 U.S.C. § 1397 *et seq.*

**4.** N.Y. Social Serv. Law § 410 (McKinney 1976).

**5.** N.Y.Admin.Code tit. 18, § 416 *et seq.* (1979).

**6.** Day care is a service by which children are supervised away from their homes in state-licensed family-home or day care centers. N.Y. Social Serv. Law § 410.3 (McKinney 1976); N.Y.Admin.Code tit. 18, §§ 418.1(a), .2(a) (1979). Such supervision is provided for more than three but less than twenty-four hours per day, *id.* § 418.1(a), and children must be between six weeks and fourteen years old to be eligible. N.Y. Social Serv. Law § 371.1

(McKinney 1976); N.Y.Admin.Code tit. 18, § 418.7(a)(2) (1979).

**7.** The Federal Government provides 75% and the State and the City each provide 12½% of the funds. *See* 42 U.S.C. § 1397a; Aff. of Anne Eskridge, Director of Eligibility for the Agency for Child Development, New York City Department of Human Resources, ¶ 7 (Jan. 13, 1982).

**8.** 42 U.S.C. § 1397a(a)(2)(A).

**9.** Congress, effective October 1, 1981, amended Title XX and converted it into a single grant (state block) program to increase state flexibility in using social services grants. Pub.L. 97–35, § 2354, 95 Stat. 867 (August 13, 1981).

**10.** 42 U.S.C. § 1397.

provide day care at public expense for resident children.[11] The day care program is not an entitlement program—that is, services are provided based upon availability of funds as well as eligibility.[12]

Pursuant to the Social Services Law, the State Department of Social Services promulgated implementing regulations which establish a two-pronged eligibility test for participation in publicly funded day care services. One requirement is financial eligibility. This criterion is satisfied by persons who are eligible for other public assistance programs, including aid to dependent children.[13] Thus plaintiffs satisfy this requirement. The other component, referred to as programmatic eligibility, relates to the social need for services. The programmatic eligibility requirements for day care services generally fall into three categories: (1) where they are a necessary part of a plan of self-support for the parent[14] who is employed or seeking employment (work-relat-

ed);[15] (2) as part of a plan to achieve or maintain self-sufficiency, including the reduction or prevention of dependency and maintenance of the family unit where because of illness the parent is unable to provide such care (non-work-related);[16] and (3) for other reasons not germane to the issues here presented.[17] Ms. Castillo's application for day care services stated the service was required because she was employed and thus it came under the work-related category of the programmatic eligibility requirement.

Ms. Castillo's satisfaction of these eligibility criteria is not in dispute. Rather, the issue here centers about an additional requirement with respect to residence that is imposed by defendants on applicants who satisfy the programmatic and financial eligibility tests. That requirement derives from a state regulation[18] ("the regula-

---

11. N.Y. Social Serv. Law, §§ 410(1), 410–b (McKinney 1976); N.Y.Admin.Code tit. 18, §§ 403.7, 404.1 (1979).

12. In December 1981, there were 7,106 children on waiting lists for day care services.

13. N.Y.Admin.Code tit. 18, §§ 404.5, 416.3.

14. Hereinafter, the term "parent" shall be taken as including both parents and caretakers.

15. Code § 416.2. Programmatic eligibility. Day care services for children are allowable only in the following instances:
   (a) As a necessary part of a plan of self-support for the parent(s) or caretaker relative(s) who meet the following requirements:
   (1) are employed;
   . . . .

16. Code § 416.2. Day care services for children are allowable [where]:
   (b) As a part of a plan to achieve or maintain self-sufficiency, including the reduction or prevention of dependency and maintenance of the family unit, when the parent(s) or caretaker relative(s) is unable to provide care or supervision of the child due to:
   (1) illness; or
   (2) incapacity;
   . . . .

17. These include, for example, instances where day care is "a necessary and integral part of an approved child welfare plan of services to (1) prevent foster care placement; or (2) provide preventive services; or (3) provide protective

services for children who have been reported neglected, abused or maltreated." See N.Y.Admin.Code tit. 18, §§ 416.2(d–f).

   The City's Department of Social Services adopted a policy that conforms to the State's eligibility criteria. That policy reads in relevant part:
   It is the policy of the New York City Department of Social Services to provide day care services to children between the ages of two months and twelve years whose parent
   . . .
   (i) is a New York City resident;
   . . . .
   (iv) satisfies the income eligibility standards set forth in state and federal laws; and
   (v) is unavailable or unable to care for the child during the day or a portion of the day because the parent or caretaker is either working, looking for work, or enrolled in an approved training program, or ill or incapacitated or necessarily absent from the home for part of the day; or, based upon the special needs of the child and/or family, to provide preventive or protective services or to prevent or reduce institutional care.

18. The State Department of Social Services Regulation 403.7 reads:
   An alien who is unlawfully residing in the United States or who fails to furnish evidence that he/she is lawfully residing in the United States, shall not be eligible for any social services except information and referral services and protective services for adults and children.

tion"), and a City policy paralleling it,[19] that renders ineligible for day care services any alien who is unlawfully residing in the United States, or who fails to furnish evidence that he or she is lawfully residing in the United States. As applied by the defendants, in instances where the alien cannot satisfy the lawful residence requirement, day care services are denied to otherwise eligible children who are either born in the United States and as such are citizens, or lawfully resident aliens but whose parents are illegally here, and the reason for requesting day care is that the parent is working.

Plaintiffs do not challenge the facial validity of the regulation but rather the manner in which it was applied in this instance and is and has been applied in like instances. They stress that by the regulation's plain language its exclusionary effect is limited to the parent who cannot document his or her legal status here—in this instance, Vincent's mother. They contend that the regulation cannot be considered solely with respect to the infant's mother— that its impact upon Vincent, a citizen of the United States, must also be considered.

The plaintiffs further argue that the defendants' policy and practice based solely upon the status of the parent conflict with the basic goal already referred to of (1) "achieving or maintaining economic self-support to prevent, reduce or eliminate dependency," and is therefore invalid.[20] They

advance other arguments, but all coalesce into a basic contention that the infant and not the parent is the prime beneficiary of the day care services.

The defendants contend otherwise. They argue that the day care service in issue is a service for Ms. Castillo because it is a work-related service as a necessary part of a plan to support herself. Accordingly, it is the parent who is the primary beneficiary [21] of day care services. Since she cannot meet the eligibility requirements, the application was properly denied. In sum, the defendants' policy treats the parent as the primary beneficiary of the day care services where such services are requested because of the parent's employment.[22]

█ As presented by the parties, the central issue is whether the parent or the child is the primary beneficiary of the day care services where programmatic eligibility is based on work-related grounds. It cannot be gainsaid that each, mother and child, derives some benefit from day care services, but any attempt to quantify the precise degree of benefit to each would be an exercise in semantic futility. The defendants attempt to avoid this balancing by arguing that because it is the parent's circumstances that determine eligibility, the parent must be the primary beneficiary. In support they stress that the day care services free the parent to work, or seek employment or

---

This Regulation is substantially similar to a federal regulation that was in effect prior to October 1, 1981, which conditioned approval of a state plan upon inclusion of such a provision. 45 C.F.R. § 233.50.

**19.** Policy Statement, New York City Department of Social Services ¶ III.C.12(b).

**20.** 42 U.S.C. § 1397(1).

**21.** At one point the City and State appeared to take somewhat different positions. The City originally argued that "day care service is a family service for the benefit of both participant parents and children." (City's Memorandum at 2–3). In contrast, the State took the position that the provision of day care benefits herein was for the parent's sole benefit. When this conflict was brought to their attention, their positions were clarified and it now appears to be that where day care is provided for

work-related reasons, as in this case, the parent is the primary beneficiary.

**22.** In other instances (such as where it is sought as a necessary and integral part of an approved child welfare plan of services to prevent foster care placement and provide preventive services or provide protective services for children who have been reported neglected, abused or maltreated), defendants contend that the child is the applicant and the primary beneficiary and that *the status of the parent is not considered* in determining eligibility. In still other instances, eligibility will be denied on the basis of the parent's status as an illegal alien. State's Memorandum in Opposition to Motion for Class Certification and Partial Summary Judgment at 6–7; State's Supplemental Memorandum at 9.

vocational training, and therefore the provision of such services fulfills a need of the parent. But merely because the parent must satisfy eligibility requirements is not a sufficient basis for concluding that the parent is the primary beneficiary. For example, none of the parties disputes that the AFDC program primarily benefits the child. Indeed, "Congress has determined that . . . the paramount goal"[23] of that program is the care and protection of children. Yet eligibility for AFDC is also dependent upon the circumstances of the child's parent. In particular, as with day care, eligibility for AFDC is dependent upon the parent's income.[24] The same is true for other social service programs, too.[25] Thus the mere fact the parent's circumstances determine eligibility does not by itself mean that the parent is the primary beneficiary.

The weighing of benefits to one as against the other tends to obscure the simple fact that day care service "is care . . . which is provided to a child,"[26] designed to protect the health, well being and safety of the child and to insure that the experience is an enriching one.[27] Indeed, a consistent and unmistakable theme reflected by the regulations is that the day care program must be designed to meet the needs of the child.[28] Other benefits flowing to a child by a grant of day care are also evident. In the absence of such care the child may be left with neighbors or friends who may fail to provide adequate or competent care, or the child may be left on its own resources without guidance or direction of any kind. The day care program insures that while the parent is at work the child will be cared for and fed properly. It is beyond peradventure that under the circumstances the child is the primary beneficiary.

That the parent also benefits from day care services does not require a different conclusion; the day care component with respect to a child's welfare cannot be considered in isolation. Under the Social Security Act it has been tied to AFDC.[29] Through the AFDC and other social services programs, the parent benefits although the programs are primarily designed to benefit the child. In this very case the AFDC payment for the infant Vincent includes a portion designated for rent. That amount covers the entire rent of the apartment in which both the mother and child reside. Thus Vincent's mother significantly benefits from the AFDC payment and the fact that she is an illegal alien is not a factor with respect to that aspect of his support.

Plaintiffs further argue that the defendants' policy conflicts with the goal of Title XX of fostering economic self-support to prevent, reduce or eliminate dependency. The thrust of the plaintiffs' argument is that day care was intended to benefit needy children by allowing their parents to work, thereby decreasing dependency upon public assistance. The argument proceeds that by providing day care service, dependency upon cash benefit programs are reduced because a working parent will have more household income available to be budgeted against the public assistance needs of her child if she does not have to pay market level fees for child care services. Plaintiffs claim that this is especially true here because it is well known that the wages paid to illegal aliens are well below those paid to legal residents.

---

**23.** *King v. Smith,* 392 U.S. 309, 325, 88 S.Ct. 2128, 2137, 20 L.Ed.2d 1118 (1968). *See also Doe v. Shapiro,* 302 F.Supp. 761, 766 (D.Conn. 1969) (three-judge court), *appeal dismissed,* 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970).

**24.** N.Y.Admin.Code tit. 18, §§ 352, 369.3(a) (1979).

**25.** *See id.* at §§ 360.5 (medical assistance), 372.1 (emergency assistance for needy families with children). *See generally id.* at §§ 351–52.

**26.** *Id.* at § 416.1.

**27.** A variety of restrictions are imposed on family homes, *see id.* §§ 417.5 (condition of physical plant), 417.7 (sanitation), 417.8 (safety precautions), 417.9 (health services), 417.10 (meals), and day care centers. *See id.* at §§ 418.8 (condition of physical plant), 418.9 (sanitation), 418.10 (safety precautions), 418.13 (nutrition), 418.16 (health services).

**28.** *See id.* at §§ 417.12(a), 418.14(a).

**29.** 42 U.S.C. § 601 *et seq.*

Defendants respond that any reduction in dependency upon public assistance is speculative and illusory because, among other matters, of the uncertainty of accurate reporting of income by an illegal alien and that in any event whether public funds are paid out through the AFDC grant or the provision of day care services, there is no net reduction in the expenditure of public funds. In sum, defendants contend that providing day care will not result in a reduced or eliminated dependency upon public support. These arguments dissolve in the face of the legislative scheme that evinces a clear determination by Congress and the State that the provision of day care will serve to reduce the child's dependency on cash benefit programs, and that the resulting emphasis on day care is preferable to one on cash benefits. Moreover, the shifting of dependency from cash benefits to in-kind services obtains whether the child's parent is an alien or a citizen, and the defendants do not dispute that the goal of decreased dependency is furthered in the latter circumstance. There is no logical basis for treating the two differently.

If Vincent, a native born citizen who is otherwise eligible is denied, on the ground of his mother's status, day care services which are granted to all other eligible native born children, as well as to non-citizen children who are legally present in the United States, it clearly penalizes him solely by reason of his mother's status. Indeed, the defendants' policy and practice under the regulation are somewhat contradictory with respect to programmatic eligibility. Just why in the instance of protective services the mother's status does not preclude day care service whereas in the instance of a work-related plan her status precludes such benefits is not made clear. Defendants draw a fine distinction as to the "right

to day care." [30] Thus they argue that when the request for day care service is made as part of a plan of self-support to foster goal 1, to wit, the achieving or maintaining economic self-support to prevent, reduce or eliminate dependency, then the right is that of the parent. When the day care service is for the purpose of preventing or remedying neglect, abuse or exploitation of the child (goal 3), then, defendants argue, it is the right of the child. This exercise in logomachy should not victimize the citizen child or a lawfully resident child and deprive it of its "right to day care."

Since the child is the primary beneficiary of day care benefits, denial of the service based solely on his mother's status is an impermissible condition that is inconsistent with an underlying purpose of Title XX of the Act that eligible children receive day care services; the policy also contravenes and tends to defeat the programmatic purpose relevant to the day care program of "achieving or maintaining economic self-support to prevent, reduce, or eliminate dependency." [31]

The enforcement of the regulation based upon the mother's status which in end result denies the citizen child or a lawfully resident non-citizen child day care services is akin to the "man in the house" provision which deprived children of AFDC because of the "sins" of the mother and which were held to contravene an underlying policy of the Act.[32] The motion of plaintiffs for summary judgment is granted. Plaintiffs are entitled to judgment enjoining the application of the regulation to the infant Vincent. The cross-motion of defendants for summary judgment is denied. This disposition makes it unnecessary to reach the constitutional claims presented by plaintiffs.

---

**30.** State's Supplemental Memorandum of Law at 8.

**31.** 42 U.S.C. § 1397(1).

**32.** *Cf. King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *see also Doe v. Shapiro,* 302 F.Supp. 761 (D.Conn.1969) (three-judge court), *appeal dismissed,* 396 U.S. 488, 90

S.Ct. 641, 24 L.Ed.2d 677 (1970) (requirement under state's regulation that mother of an illegitimate child divulge name of child's father as a condition of AFDC eligibility held invalid on the ground it imposes an additional condition of eligibility not imposed by the Social Security Act).

■ There remains for consideration plaintiffs' motion for class action certification pursuant to Rule 23(a) and Rule 23(b)(2). The action was instituted on behalf of the infant Vincent Ruiz and those in his class, which would include all children residing in New York City who are United States citizens who have been, or will be, denied day care service solely because the parent cannot produce proof of legal resident status. Plaintiffs' proposed class also includes other New York City infants who are non-citizens and who are permanent legal residents under color of law but whose parent, as in the instance of the first group, cannot document legal presence in the United States and for that reason also will be denied day care service.[33]

The defendants do not dispute that plaintiff satisfies the requirements of Rule 23(a) and (b)(2) for maintenance of the suit as a class action. However, they resist certification essentially upon the ground that class certification is unnecessary since if Vincent should prevail upon his claim and a judgment entered in his favor declaring that the practices and policies here under attack are invalid, then it may be assumed that the defendants, as government officials, will respect the judgment of the Court and the invalidated policy will not be applied to all others similarly situated as the individual plaintiff. This Court has previously accepted that view. It has stated:

The defendants are public officials charged with compliance with and enforcement of federal as well as state laws. The Court assumes these public officials, mindful of their responsibilities, will apply the determination here made equally to all persons similarly situated. "[I]t would be unthinkable that the ... defendants would insist on other actions being brought" to vindicate the same rights at issue here.[34]

Moreover, this view has seemingly gained acceptance by our Court of Appeals.[35] While this Court is aware of instances where the "non-necessity" doctrine has not been accepted,[36] and of officials who have been resistant to judicial restraint,[37] in this case there is no indication that the decree to be entered in favor of plaintiffs will not be honored by the defendants as to those similarly situated. Indeed, any decree entered in favor of plaintiffs would also run to the benefit of all similarly situated.[38]

While there may be actions where factual issues which could lead to controversy in the enforcement of the decree with respect to persons other than the named infant plaintiff, this is not such a case. Acting upon the assumption that the defendant officials will respect and enforce the decree so that it applies to all in the class of Vincent, the class certification is denied.

So ordered.

33. The proposed class includes children whose parents satisfy the work-related and non-work-related categories of programmatic eligibility.

34. *Feld v. Berger,* 424 F.Supp. 1356, 1363 (S.D.N.Y.1976); *see also Kow v. New York City Housing Authority,* 92 F.R.D. 73, 74 (S.D.N.Y.1981); *Rivers v. Califano,* 86 F.R.D. 41, 46 (S.D.N.Y.1980); *Tyson v. New York City Housing Authority,* 369 F.Supp. 513, 516 (S.D.N.Y.1974); *McDonald v. McLucas,* 371 F.Supp. 831, 833–34 (S.D.N.Y.) (three-judge court), *aff'd,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974).

35. *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Vulcan Society v. Civil Service Commission,* 490 F.2d 387, 399 (2d Cir.1973).

36. *Laurido v. Simon,* 489 F.Supp. 1169, 1174 (S.D.N.Y.1980); *Montes v. Brezenoff,* 85 F.R.D. 130, 132 (S.D.N.Y.1980) (noting prior case where court declined to certify class and, as a result, future litigation was necessitated); *Becker v. Toia,* 439 F.Supp. 324, 329 (S.D.N.Y.1977); *Bacon v. Toia,* 437 F.Supp. 1371, 1383 (S.D.N.Y.1977), *aff'd mem.,* 580 F.2d 1044 (2d Cir.1978).

37. *Swift v. Blum,* 502 F.Supp. 1140 (S.D.N.Y.1980).

38. *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974).