**Dario FUENTES, et al., Plaintiffs,**

**v.**

**Cindy WHITE, et al., Defendants.**

**No. 85–4162–R.**

United States District Court,
D. Kansas.

March 17, 1989.

Bill Piatt and Michael Kaye, Topeka, Kan., for plaintiffs.

Reid Stacey, Legal Div., State Dept. of Social and Rehabilitation Services, Topeka, Kan., for Dept. of Social and Rehabilitation Services.

Roberta Sue McKenna, Staff Counsel, Dept. of Social and Rehabilitation Services, Topeka, Kan., for White, Hamilton and Lichtfield.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon plaintiffs' counsel's motion for attorney's fees. Plaintiffs' counsel seeks fees because he contends that the plaintiffs were the prevailing party in this litigation. Having carefully reviewed the arguments of the parties, the court is now prepared to rule. Defendants have requested oral ar-

gument on the motion but we deem it unnecessary.

In considering plaintiffs' counsel's motion, we are guided by the Supreme Court's caution that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Nevertheless, the arguments raised by the parties here have virtually required the court to consider this case anew.

Both the procedural and the factual background of this action are important to the court's decision. The court shall begin with a review of the procedural background. This action was filed on April 24, 1985. In the complaint, plaintiffs asserted civil rights claims and sought damages and equitable relief. Plaintiffs are Maria de Jesus Cerca and her three minor children— Dario Fuentes, Iris Fuentes, and David Fuentes. The complaint alleged that the defendant Kansas Department of Social and Rehabilitative Services (SRS), acting through its employees, defendants Cindy White, Brad Hamilton and Betty Litchfield, denied the minor children public assistance because their parents were not citizens of the United States.

Defendant SRS filed a motion to dismiss on May 14, 1985 based primarily on Eleventh Amendment immunity. Plaintiffs apparently believed that the motion had merit and signed a journal entry dismissing SRS with prejudice from this action. The court approved the journal entry on May 28, 1985. The parties then agreed to dismissal of the entire case with the exception of the allocation of costs and the awarding of attorney's fees. The court signed an order on July 22, 1985 which dismissed this action. This order, which had been prepared by the parties, read as follows:

> This matter having come before the Court upon the motion of all parties to dismiss and the Court being fully advised in the premises and the Court finding that the parties have settled this case to the satisfaction of each, reserving for further determination by this Court the allocation of costs and the awarding of

attorneys' fees, if any, to the Plaintiffs' attorneys herein,

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiffs' Complaint be and hereby is dismissed with prejudice.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the allocation of costs, and the awarding of attorneys' fees, if any, to Plaintiffs' attorneys is reserved pending further order of this Court.

Plaintiff's counsel filed the instant motion on July 29, 1985. Counsel contends that he is entitled to attorney's fees pursuant to 42 U.S.C. § 1988 because plaintiffs succeeded on significant issues, achieved some of the benefits sought, and caused substantial material changes in the defendants' conduct. Plaintiffs' counsel seeks $7,550.00 in attorney's fees, $105.00 in costs, and $589.50 for paralegal/interpreter expenses. Defendants argue that plaintiffs' counsel is not entitled to any fees or costs because plaintiffs did not prevail, even minimally, in this litigation.

The law applicable to the award of attorney's fees under the circumstances in this case was succinctly stated in *Supre v. Ricketts,* 792 F.2d 958, 962 (10th Cir.1986):

> [A] plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. A plaintiff may prevail in the absence of a judicial determination or full litigation. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). The test for determining whether a plaintiff is a prevailing party when there has been no adjudication was recently set forth in *J. & J. Anderson, [Inc. v. Town of Erie],* 767 F.2d [1469] at 1475 [10th Cir.1985], and contains two elements which must be satisfied. The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e., the suit must be a "substantial factor or a significant catalyst" in prompting the defendants,to act or cease their behavior. He must also demonstrate that the defendant's conduct in response to the lawsuit was required by the Constitution or federal law, i.e., the

defendant's actions must be legally required.

The first element primarily involves a factual inquiry: whether the lawsuit caused the defendant to act. The trial court is in the best position to evaluate this issue because it has dealt with the parties and can evaluate the strengths and weaknesses of the case.... The second element primarily requires legal analysis, although the facts certainly bear on the outcome. (Footnote omitted.)

*Also see Lovell v. City of Kankakee,* 783 F.2d 95, 96–7 (7th Cir.1986).

■ If the plaintiffs are deemed prevailing parties, then they should recover an attorney's fee unless special circumstances would render such an award unjust. *Hensley v. Eckerhart, supra,* 461 U.S. at 429, 103 S.Ct. at 1937. The court's discretion in denying attorney's fees to prevailing parties is quite narrow. *Wilson v. Stocker,* 819 F.2d 943, 951 (10th Cir.1987). A defendant must make a strong showing of special circumstances to support denial of attorney's fees. *J. & J. Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1474 (10th Cir.1985).

A determination of the first element of the inquiry set forth in *Supre* requires an examination of the factual background in this case. The court has developed the following factual background from the affidavits and exhibits that appear in the file. In March, 1985, plaintiff Maria de Jesus Cerca went to the SRS offices in Topeka, Kansas to make application for public assistance for her minor children. She is Hispanic and is not proficient in the English language. On March 11, 1985, she was informed by defendant Betty Litchfield that her application would be denied unless she provided the following information by March 25, 1985: (1) social security numbers for herself, her husband, and her two children; (2) wage verification from her husband from February 1, 1985 through March 11, 1985; and (3) proof of United States citizenship or current alien registration verification. The application was subsequently denied when Maria failed to produce the requested information. She was informed by SRS that she did have the right to a hearing if she disagreed with their decision.

On April 5, 1985, Maria contacted counsel and explained her situation. He decided to go with Maria to the SRS office and request a hearing. Plaintiffs' counsel and Maria were told to file a new application and were given new application forms. The applications were filled out by Maria with the aid of an interpreter, and Maria and her counsel returned to the SRS office on April 15, 1985. The application asked only for public assistance for her minor children. Maria and her counsel met with defendant White. White asked Maria for proof of citizenship and social security numbers for her and her husband. Counsel indicated to White that such a request was unlawful. White then stated that she needed to confer with her supervisor, defendant Brad Hamilton. White returned and told Maria and her counsel that the children were disqualified from any public assistance because of the parents' inability and unwillingness to prove they were citizens of the United States. White wrote plainly on the applications: "Parents not legal U.S. citizens." She also noted the following on the application next to the names of the childrens' parents: "Not citizens. No SSN [social security number] reported." Counsel asked for an explanation of SRS policy on this issue. White wrote a memo and gave it to counsel, which reads as follows:

TO: Maria de Jesus Cerca
RE: Denial of application for medical and food stamps

Ms. Cerca's application for medical and food stamps were denied thru the Walk-In procedure on 4/15/85.

Ms. Cerca and her husband David Fuentes are the legal parents of the children they are applying for, but they along with 1 child (Ulisis) are not U.S. Citizens. They were given the opportunity to supply the proof of citizenship and Social Security numbers but refused to provide the information as they thought it unnecessary to provide it. They were verbally told that they could not be left

off the cases as they are the legally responsible adults for their children. Consequently the entire household is ineligible.

Counsel returned to his office and prepared a written request for a hearing. In this request, counsel noted that he believed that the position of the SRS requiring citizenship information for the parents of the minor children was unconstitutional as a violation of their equal protection rights. This request for hearing was delivered to the SRS in person on April 17, 1985. Later that day, counsel received a telephone call from defendant Hamilton indicating that counsel had not submitted the correct form for requesting a hearing. On April 18, 1985, Maria brought counsel another denial of her original application from defendant Litchfield indicating a denial on April 12, 1985.

Thereafter, counsel decided to file an action in this court. This case was filed on April 24, 1985. In an answer filed on May 15, 1985, the defendants indicated that the plaintiffs' application was neither approved nor denied because the plaintiffs failed to provide sufficient information, including their failure to provide their father's citizenship or legal alien status. On May 17, 1985, counsel for the defendants wrote counsel for the plaintiffs the following letter:

As discussed in our phone conversation this morning, the Department is willing to set aside the issue of the parents citizenship or legal resident status and proceed with a determination of eligibility for three of the four Fuentes children. In order to determine what, if any benefits, the citizen children may be entitled we will need the following:

1. Application forms must be completed with current, accurate information and left with the agency.
2. Social Security numbers or verification of Social Security numbers for all individuals for whom assistance is sought.
3. Verification of the parents income.
4. The process, including required interviews, must be completed.

If Ms. Cerca requires an interpreter, we will provide one. I repeat that we are eager to provide assistance to which any applicant is entitled and I am available to assist in a speedy resolution of this matter.

On July 9, 1985, counsel for plaintiffs wrote a letter to defendants' counsel, which stated in pertinent part the following:

I am writing to offer settlement of this case. My clients are willing to dismiss, with prejudice, any money damage claims arising from their dealings with your clients and the Department of Social & Rehabilitation Services if you would: 1. Confirm in writing that in the future, our citizen-children clients will not need to prove citizenship or legal alien status and Social Security numbers for their parents in order to be eligible for benefits from the Department of Social & Rehabilitation Services; and 2. Confirm in writing that there has been some training made available to local SRS workers which has informed them that citizen-children do not need to prove the citizenship or legal alien status and Social Security numbers of their parents in order to be eligible for public assistance.

If these matters are agreeable to you, I would ask that you express acceptance by writing me a letter confirming the above-mentioned matters, executing the enclosed Motion to Dismiss and Order, and sending me your letter together with the Motion and Order. As I indicated to you on the phone and as reflected in the Motion and Order, we would leave a determination as to the allocation of costs, and the awarding of attorneys' fees, if any, to plaintiffs' counsel, for further consideration by the Court. I will file the Motion and present the Order to the Court as soon as possible.

Defendants' counsel responded with the following letter on July 12, 1985, which stated:

Please be advised that, while the department continues to deny any liability claimed in U.S. District Court, Case Number 85–4162–R, training was provid-

ed for all income maintenance workers in the Topeka Area Office on the 29th and 30th of May, 1985. Said training included instruction regarding the issue of citizenship and legal alien status. Specifically, that workers are not to require proof of citizenship, legal alien status or Social Security numbers from non-applicants. Persons who are unable or unwilling to provide proof of citizenship or legal alien status are and will remain ineligible for benefits. Applicants are required to provide proof of citizenship, or legal alien status and Social Security numbers. The department will continue to comply with 7 CFR 273.4 in situations where it applies.

The citizen children who are your clients were not, of course, specifically mentioned in the above-described training but would fall within the guidelines described and would be treated as any other applicants. They need not fear any retaliation or harsh feelings on the part of the department or its agents.

I sincerely hope that, in the future, you and others at the Washburn Legal Clinic will give us the opportunity to respond to any misunderstanding or complaints prior to filing a law suit. It is my belief the same results would have been obtained with a phone call or letter. I enclose your signed motion and order.

This action was dismissed on July 22, 1985 upon the aforementioned agreed order submitted by the parties.

Given this background, the court finds that the plaintiffs have clearly demonstrated that they were the prevailing parties in this litigation. The record before the court clearly demonstrates that the minor children of Maria de Jesus Cerca were denied public assistance benefits because of their parents' inability to demonstrate that they were citizens of the United States or legal aliens. The defendants ultimately agreed to provide benefits without regard to the status of the children's parents. Thus, the settlement of this lawsuit was a "significant catalyst" in prompting the defendants to end their policy. The suggestion by the defendants that the plaintiffs' applications

were never denied or were denied because the plaintiffs provided insufficient information is not supported by the facts. The record clearly indicates that the sole reason for the denial of benefits to the minor children was because their parents were not United States citizens or legal aliens. This action ended that policy and, thus, the plaintiffs must be regarded as prevailing parties.

The next question faced by the court is whether the defendants' conduct in response to the lawsuit was required by the Constitution or federal law. We believe that there is little question that the policy applied by the defendants—not allowing public assistance benefits to children who are United States citizens because their parents are not United States citizens or legal aliens—violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. *See e.g., Doe v. Miller*, 573 F.Supp. 461 (N.D.Ill. 1983); *Ruiz v. Blum*, 549 F.Supp. 871 (S.D. N.Y.1982); *Intermountain Health Care, Inc. v. Board of Commissioners of Blaine County*, 109 Idaho 412, 707 P.2d 1051, 1054 (1985) (Donaldson, C.J., specially concurring); *Darces v. Woods*, 35 Cal.3d 871, 201 Cal.Rptr. 807, 679 P.2d 458 (Cal.1984). *Also see Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (statute which withholds from school districts funds for education of children not legally admitted into United States and authorizes school districts to deny enrollment to such children violates equal protection clause of Fourteenth Amendment). The defendants have not seriously argued that such a policy would be constitutional and have not provided any compelling reason for such a policy. In sum, we find that the plaintiffs were prevailing parties in this litigation.

Having concluded that the plaintiffs were prevailing parties, we must next consider whether there are any special circumstances that would render an award of fees unjust. The defendants have suggested essentially two reasons why an award of attorney's fees to plaintiffs' counsel would be unjust. First, they argue that they should not be responsible for paying the plaintiffs' attorney's fees because they act-

ed in good faith in processing the plaintiffs' applications. Second, they assert that this action did not need to be filed because plaintiffs would have prevailed had they followed through on their administrative complaint.

■ The court finds no merit to either argument raised by the defendants. A defendant's good faith belief in the legality or constitutionality of his actions has been rejected as a special circumstance warranting denial of attorney's fees. *Jones v. Wilkinson*, 800 F.2d 989, 992 (10th Cir.1986) (per curiam); *J & J Anderson, Inc. v. Town of Erie, supra*, at 1474. In addition, a party need not exhaust state administrative remedies prior to initiating a § 1983 action in order to qualify as a prevailing party entitled to attorney's fees under § 1988. *J & J Anderson, Inc. v. Town of Erie, supra*, at 1475.

Finally, we turn to the amount of attorney's fees to be awarded to plaintiffs' counsel. Plaintiffs' counsel has requested fees in the amount of $7,750, representing 77.5 hours of work at $100 per hour. Defendants contend that the number of hours and the hourly rate are unreasonably high.

In *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir.1986), the Tenth Circuit established the following guidelines for determining the proper amount of an attorney fee award:

In *Blum* [*v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)] and *[Pennsylvania v.] Delaware Valley [Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)], the Supreme Court emphasized that the "basic standard" for finding reasonable fees is the determination of reasonable hours and rates. *Blum*, 465 U.S. at 898, 104 S.Ct. at 1548. The many factors for evaluating legal representation set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), and elsewhere, "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9 (quoted in *Delaware Valley* [478 U.S. at 564], 106 S.Ct. at 3098). "[T]he lodestar figure [reasonable hours times reasonable rates] includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee." *Delaware Valley*, [478 U.S. at 566], 106 S.Ct. at 3098. Once counsel has carried its burden of proof on the "basic standard" a strong presumption arises that the product represents a reasonable fee. *Delaware Valley, Id.* Thus, the court's most careful labor must be concentrated on adjustments to claimed hours and rates in order to arrive at reasonable hours and rates.

Plaintiffs' counsel has indicated that he worked 77.5 hours on this action. However, the court's review of the time records supplied by plaintiffs' counsel shows only 77.4 hours of work. Thus, we begin with a claimed total of 77.4 hours, not 77.5 hours.

■ The court has carefully examined the hours claimed by plaintiffs' counsel and we generally find them to be reasonable. We do find, however, that certain additions and reductions need to be made. Counsel has sought fees for work performed on the administrative appeal related to this case. Plaintiffs' counsel is not authorized to receive fees for work performed pursuing a state administrative remedy under § 1988. *Webb v. Dyer County Board of Education*, 471 U.S. 234, 241, 105 S.Ct. 1923, 1927, 85 L.Ed.2d 233 (1985). The court has some difficulty in assessing exactly how many hours were spent on the administrative appeal, but we believe that approximately five hours were devoted to the appeal. Accordingly, the court shall reduce the number of hours claimed by plaintiffs' counsel to 72.4 hours. The court has carefully reviewed the other hours claimed by plaintiffs' counsel, and we believe that a further reduction of ten hours is necessary because certain hours appeared either unnecessary or unreasonable. The court shall also add five hours to plaintiffs' counsel's request for time spent in replying to defendants' response to the motion for attorney's fees. An award of reasonable attorney's fees may include compensation for work performed in preparing and present-

ing the fee application. *Mares v. Credit Bureau of Raton, supra,* at 1205. With these various corrections, the court finds that plaintiffs' counsel reasonably expended 67.4 hours on this litigation.

■ Plaintiffs' counsel has asked that he be compensated at the rate of $100 per hour for the work performed in this case. The court finds that $100 an hour is unreasonable. We shall apply a rate of $80 an hour. We believe that this rate reflects an appropriate rate for the services performed by plaintiffs' counsel here.

In sum, the court shall award plaintiffs' counsel a fee in the amount of $5,392.00. This amount represents a reasonable fee under the circumstances.

Plaintiffs' counsel has also asked for the expenses incurred in hiring an interpreter for the plaintiffs. Plaintiffs' counsel asks for $589.50, representing 36 hours of work at $15.50 per hour plus $31.50 in mileage expenses.

The court finds that some award for these expenses is reasonable. Having carefully reviewed the affidavit submitted by the interpreter, the court finds that a 25% reduction in the number of hours claimed is necessary because some of the hours relate to the administrative hours and some appear unreasonable. The court finds the rate requested by the interpreter to be reasonable. The court shall award the interpreter $418.50 in fees and $31.50 in expenses.

Lastly, the court shall award costs to plaintiffs in the requested amount of $105.00.

IT IS THEREFORE ORDERED that plaintiffs' counsel's motion for attorney's fees be hereby granted. Plaintiffs' counsel shall be awarded fees in the amount of $5,392.00. Plaintiffs' interpreter shall be awarded $418.50 in fees and $31.50 in expenses. Plaintiffs shall be awarded costs in the amount of $105.00.

IT IS SO ORDERED.